IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | |
| ) | No. 08 CR 115 |
| MARK POLCHAN, ) | |
| MICHAEL SARNO, ) | Hon. Ronald A. Guzmán |
| also known as, "Big Mike, "Mikey," ) | |
| "Large," and "the Large Guy," ) | |
| ANTHONY VOLPENDESTO, ) | |
| SAM VOLPENDESTO, and ) | |
| CASEY SZAFLARSKI. ) | |

**Memorandum Opinion and Order Determining Various Pretrial Motions**

**Sarno's Failure to File**

The government seeks to introduce evidence that Sarno failed to file income tax returns between the years 2001 and 2009. According to the government, Sarno's failure to file tax returns in any of these years constitutes evidence of his intent to hide income derived from illegal gambling and other activities of the racketeering enterprise. As a predicate, the government will present evidence that Sarno was given cash by Polchan during 2007, that in intercepted conversations, Sarno and Polchan discussed illegal gambling activity, that Sarno's statements demonstrate that he was controlling the placement and operation of these gambling machines and that, at the time of his arrest in 2008, Sarno had approximately $17,000.00 in cash located in his residence. In addition, Mark Hay will testify that he observed Polchan give Sarno cash an unknown number of times. Based on this and other evidence, the government argues that the jury may reasonably infer that Sarno derived income from this and other enterprise activity and that his failure to file returns was motivated by an effort to conceal the illegal nature of his income. The government will also be introducing evidence that Sarno's co-conspirators, Polchan and Szaflarski, failed to file tax returns in 2007 (as charged in Counts Eleven and Fifteen of the Third Superseding Indictment). Thus, there will be substantial evidence that one of the ways in which the members of the conspiracy attempted to conceal the existence and operation of the enterprise (as charged in Count One) was by hiding the income derived therefrom.

Sarno first argues that his failure to file tax returns is not relevant because there is insufficient evidence for the jury to conclude that he received enterprise income from Polchan or in any other way. However, after reviewing the various government proffers of evidence, the Court concludes that a jury could draw the reasonable inference that Polchan shared the proceeds of the stolen merchandise he dealt in with Sarno and that Sarno, Polchan and Szaflarski were engaged in illegal gambling operations and shared

the proceeds therefrom. The defendant posits other explanations for the source of the money that Polchan gave to Sarno, which defense attorneys are free to argue and the jury may choose to credit. But the government's evidence in this regard, which is offered to establish a matter in issue other than the defendant's propensity to commit the crime charged, is sufficient for a reasonable jury to conclude that Sarno received substantial amounts of income from enterprise-related activities that he did not report. Given the totality of the evidence, including evidence of Sarno's other attempts to conceal from law enforcement his conversations and operations, the jury may also conclude that his failure to report this income is evidence of an effort to conceal the illegal nature of the enterprise and his involvement in it. The government's motion to admit this evidence is granted and the defendant's objections are overruled.

**Alfieri Jewelers Conviction**
The government also moves to admit as proof of the pattern of racketeering activity alleged in the Third Superseding Indictment evidence that Anthony Volpendesto was previously convicted of robbery of Alfieri Jewelers, located in Portage, Michigan, on February 14, 2003. Volpendesto objects, arguing that evidence of a prior criminal conviction is extremely prejudicial and should be excluded under Rule 403, especially given the government's failure to explain how the conviction would be admissible and for what purpose. In a pretrial hearing, the Court ruled that proof of Anthony Volpendesto's prior conviction will be admitted to establish his commission of the offense. With this order, the Court clarifies and amplifies its oral ruling.

The Third, Ninth, Tenth and Eleventh Circuits have held that the government cannot use offensive collateral estoppel in a criminal prosecution. The Sixth Circuit allows the government to enter RICO co-defendants' convictions into evidence, but allows the defendant to show his non-involvement in the other defendants' crimes. The Eighth Circuit allows the use of offensive collateral estoppel in criminal cases without limitation.

In *United States v. Pelullo*, 14 F.3d 881 (3d Cir. 1994), a case directly on point, the Third Circuit held that precluding a defendant from relitigating a prior conviction for wire fraud, which the government sought to use as proof of a predicate offense in defendant's subsequent trial on racketeering charges, would violate the defendant's right to a jury trial. *Id.* at 891-92. Borrowing from the New Jersey Supreme Court's reasoning in *State v. Ingenito*, 432 A.2d 912, 915-16 (N.J. 1981), the Third Circuit explained that the jury has the "nondelegable and nonremovable responsibility" to decide the facts and find whether the accused is guilty. *Id.* at 892. The Third Circuit found that the State's use of collateral estoppel would prevent the jury from fulfilling this responsibility, and accordingly it would violate the defendant's right to a jury trial. *Id.* at 892.

Appellate courts that have rejected the use of offensive collateral estoppel stress that the interest in judicial efficiency cannot trump a criminal defendant's constitutional right to a jury trial. *See United States v. Gallardo-Mendez*, 150 F.3d 1240, 1244 (10th Cir. 1998); *Pelullo*, 14 F.3d at 893. *Cf. Ashe v. Swenson*, 397 U.S. 436, 464-65 (1970) (Burger, J., dissenting) (stating, with respect to the use of defensive collateral estoppel in

criminal cases, that "finality and conservation of private, public and judicial resources are lesser values [in criminal cases] than in civil litigation" and assuming that courts that allow the use of defensive collateral estoppel "would certainly not apply it to both parties . . . , *i.e.*, here, if Ashe had been convicted at the first trial, presumably no court would then hold that he was thereby foreclosed from litigating the identification issue at the second trial"); *United States v. Dixon*, 509 U.S. 688, 710 n.15 (1993) ("[A]n acquittal in the first prosecution might well bar litigation of certain facts essential to the second one -- though a conviction in the first prosecution would not excuse the Government from proving the same facts the second time.").

Thus, it appears that the majority rule is that a defendant is not collaterally estopped from relitigating a prior conviction when it is offered in a second suit to establish a predicate offense for a racketeering charge. To do so, the majority of appellate courts have held, would violate the defendant's right to a jury trial. The Court will, therefore, allow proof of Anthony Volpendesto's guilty plea as evidence that he committed the acts alleged in the complaint to which he pled guilty. However, the defendants will not be precluded from contesting the issue either by cross-examination or by the introduction of contrary evidence.

**Bella Cosa Jewelers Robbery**

The government also moves to admit evidence of the robbery of Bella Cosa Jewelers in Willowbrook, Illinois on May 6, 2002 (an uncharged crime) to prove the existence of an enterprise and the racketeering conspiracy. Cooperating witness Hay is expected to testify that he and defendant Anthony Volpendesto participated in the theft and that the stolen jewelry was taken to Polchan to convert to cash. Count One of the Third Superseding Indictment alleges that the defendants agreed to participate in the affairs of the charged enterprise through a pattern of racketeering activity that included armed robberies and thefts from jewelry stores, businesses and private residences. Accordingly, the government must prove the existence of the enterprise charged in the indictment, namely, an association-in-fact that constituted an ongoing organization whose members functioned as a continuing unit for the purpose of, among other things, generating income for its members through various illegal activities. It is to fulfill this requirement that the government seeks to introduce proof of the robbery of Bella Cosa Jewelers. Thus, evidence that members of the conspiracy committed the Bella Cosa theft and Polchan acted as a fence for the stolen jewelry would be direct evidence of one of the elements of the offense as described in the indictment.

Volpendesto objects because: (1) the government did not disclose this "other crimes" evidence ninety days before trial, as it had agreed to do; and (2) the government has located its witnesses prior statements with respect to this theft but not the investigative report of the Willowbrook Police Department, which Volpendesto contends is required to properly defend this allegation. But the trial is not scheduled to begin until November 9, 2010, giving defendant ample time to investigate this new information. Moreover, as it has all throughout these proceedings, the Court stands ready to aid the

defendants' investigative processes in preparation for trial with the issuance of subpoenas, appointment of investigators and in any other manner that is appropriate.[1]

Volpendesto also contends that the admission of this evidence would violate Federal Rule of Evidence 403. This argument must fail as the evidence is as to an essential element of the government's case-in-chief, not as circumstantial evidence of motive or proof of character, and is no more prejudicial than proof of any criminal act in furtherance of the conspiracy. If such evidence were to be excluded because of its prejudicial effect, the government would be effectively precluded from proving one of the essential elements of the offense charged in Count One. Thus, the government's motion to admit this evidence is granted.

### 2001 Currency Exchange Burglary

The government also seeks to introduce evidence of the 2001 burglary by Hay and Polchan of the currency exchange next door to Goldberg Jewelers. This evidence is offered to establish the relationship between Hay and Polchan, two of the core participants of the alleged criminal conspiracy. The burglary is a part of the pattern alleged in the indictment, occurred within the time period alleged in the indictment and involved the use of Polchan's commercial establishment, Goldberg Jewelers, where many of the enterprise's robberies were planned and the proceeds of those robberies where taken to be sold or moved. Therefore, the government's motion to admit this evidence is granted.

### 2008 Hinsdale Burglary

The government also intends to introduce evidence that members of the enterprise committed a burglary in Hinsdale, Illinois in 2008 and Hay, Formato and other enterprise members took the safe stolen during the burglary to Polchan's residence in Justice, Illinois. The proffered evidence establishes that, in committing this offense, the defendants were acting as a group and within the pattern of illegal activities described in the indictment. Moreover, on this occasion, as in others which formed part of the pattern of racketeering activity, the defendants enlisted the services of other corrupt police officers to conceal their participation in the burglary. Because the incident involves core conspirators, follows the pattern of using Polchan to convert the proceeds of the burglary and is an example of the use of corrupt police officers to conceal the existence and participation of the enterprise members from police as alleged in the indictment, the government's motion to admit this evidence is granted.

### Purchase of Contraband Cigarettes

The government also seeks to introduce evidence that Polchan purchased contraband cigarettes from Hay on June 3, 2005 and Volpendesto helped Mark Hay sell contraband cigarettes on May 17, 2005. The indictment alleges that the enterprise's illegal activities included transporting stolen goods across state lines, obtaining stolen goods from interstate shipments and possessing and selling stolen goods. The knowing sale and purchase of stolen cigarettes implicates all of these and shows that Polchan was

---

[1] The Court notes that defendants have made no such request with respect to this evidentiary proffer by the government.

the person the enterprise members used to convert the proceeds of their illegal activities to cash. The government's motion to admit is granted.

### 2001 Theft of Tennis Bracelets

The government also moves to admit evidence of thefts (as opposed to robberies) by Hay and others from jewelry stores, specifically, the 2001 theft of tennis bracelets, wherein the proceeds were delivered to Polchan. Absent some evidence that Polchan and some other member of the conspiracy planned this theft, divided the profits from it or cooperated in some other way with respect to it, Hay's theft and his use of Polchan as a fence, lacks sufficient connection to the enterprise to be of much probative value. Given its limited probative value and the potential for undue prejudice that could arise from admitting evidence of this criminal activity, the government's motion to admit this evidence is denied.

Other than this evidence however, the evidence regarding the other above enumerated uncharged illegal activities help to establish the existence of a continuing association-in-fact the goal of which was to produce income through various illegal activities over a significant period of time. Many of the participants are the same, although -- as one would expect among a core group of conspirators who belong to a common organization or enterprise -- in different combinations from time to time. These criminal acts help to establish cooperation in a pattern of joint action to commit thefts and burglaries and possess stolen property with the aim of utilizing Polchan to convert the illegal proceeds to cash. The evidence shows that, to a great extent, enterprise members consistently performed a particular function necessary to achieve its goals and establish continuity of the association-in-fact. Taken together with evidence of other occurrences proffered by the government, including conversations from which a hierarchy within the organization can be reasonably inferred, this other crimes evidence is relevant and important to the government's attempts to prove the existence of the criminal enterprise. In addition, the Court sees no special prejudicial effect here. The alleged criminal conduct does not involve a heinous murder or wanton acts of intentional and unnecessary cruelty. In view of the direct relevance and importance of such acts, their probative value is not outweighed by any prejudicial effect to the defendants.

### Admonishment re Disruptive Behavior

The government has also made a motion that the Court admonish defendant Anthony Volpendesto as to the consequences of misconduct during the course of the trial. Mr. Volpendesto has not, as far as the Court is aware, engaged in any misconduct during any of the pretrial proceedings. However, he has on two occasions asked to discharge his attorney and later retracted the requests. In addition, he is clearly intent on submitting to the Court a novel legal theory regarding its jurisdiction over his person, which his attorney has, for professional reasons, refused to present. As a result, the Court is concerned that Mr. Volpendesto may attempt to present his legal theory regarding jurisdiction to the jury and, in the course of doing so without his attorney's aid, may become disruptive. Therefore, the Court considers it prudent to inform Mr. Volpendesto of the possible consequences of disrupting the trial proceedings.

Mr. Volpendesto should understand that the Court has wide latitude in controlling a defendant's behavior. Federal Rule of Criminal Procedure 43 states:

> (1) In General. A defendant who was initially present at trial, or who had pleaded guilty or nolo contendere, waives the right to be present under the following circumstances:
>
> (A) when the defendant is voluntarily absent after the trial has begun, regardless of whether the court informed the defendant of an obligation to remain during trial;
>
> (B) in a noncapital case, when the defendant is voluntarily absent during sentencing; or
>
> (C) when the court warns the defendant that it will remove the defendant from the courtroom for disruptive behavior, but the defendant persists in conduct that justifies removal from the courtroom.

Fed. R. Crim. P. 43(c).

This rule is based on the holding in *Illinois v. Allen*, 397 U.S. 337 (1970). In that case, Allen represented himself with standby counsel and, because of his disruptive behavior, was removed from the courtroom and a jury was seated in his absence. *Id.* at 339-40. The Supreme Court held that Allen had, by inappropriate behavior, forfeited his right to be in the courtroom:

> [W]e explicitly hold today that a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom.
>
> . . . .
>
> . . . . We think there are at least three constitutionally permissible ways for a trial judge to handle an obstreperous defendant: (1) bind and gag him, thereby keeping him present; (2) cite him for contempt; or (3) take him out of the courtroom until he promises to conduct himself properly.
>
> . . . .
>
> [I]n some situations, which we need not attempt to foresee, binding and gagging might possibly be the fairest and most reasonable way to handle a defendant who acts as Allen did here.

*Id.* at 343-44.

The Seventh Circuit has also weighed in on the Court's ability to control its own courtroom in the face of unruly behavior. In *United States v. Patterson*, No. 07-2974, 2010 WL 3938224 at *3 (7th Cir. Sept. 23, 2010), the Seventh Circuit not only upheld Patterson's ejection from the court room but also the trial judge's refusal to let him proceed pro se.

In short, the trial courts have been given broad discretion to control disruptive defendants. The defendants are admonished that the Court will, however reluctantly, do all that is reasonably necessary to protect the integrity of the trial and the rights of co-defendants to be free from prejudice resulting from an unruly defendant's conduct.

Dated: October 20, 2010

**SO ORDERED**  **ENTER:**

*/s/ Ronald A. Guzmán*

**RONALD A. GUZMÁN**
**District Judge**