**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 08 CR 115 |
| v. ) | |
| ) | Judge Ronald A. Guzmán |
| MICHAEL SARNO, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

Defendant Michael Sarno's motion for compassionate release under the First Step Act [984] is denied.

**STATEMENT**

Michael Sarno seeks compassionate release due to COVID-19 and his medical conditions. "[A] judgment of conviction that includes . . . a sentence [of imprisonment] constitutes a final judgment" that can be modified only in certain enumerated circumstances. 18 U.S.C. § 3582(b). As is relevant here:

> A court, upon motion of the Director of the Bureau of Prisons ["BOP"], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable if it finds that (i) extraordinary and compelling reasons warrant such a reduction and that a reduction is "consistent with applicable policy statements issued by the Sentencing Commission."

*Id.* § 3582(c)(1)(A).

As summarized by the Seventh Circuit, the background facts of Sarno's crimes are as follows:

> This case involves a criminal enterprise operating in and around Cicero, Illinois. Through a business called Amusements Inc., the enterprise distributed "video gambling devices" to local bars and restaurants. These machines, which allow

customers to deposit money in return for virtual credits, are legal so long as they are used for amusement only. But the enterprise and the establishment owners permitted trusted customers to redeem their credits for cash. The devices were modified to track money coming in and being paid out, so that the establishment owners and the enterprise could each take a cut of the profits. Video gambling was a lucrative business, and the enterprise did not take kindly to prospective competitors. When a rival company, C & S Amusements, encroached on Amusements Inc.'s turf, the enterprise placed a pipe bomb outside the rival's headquarters in order to send a message.

In addition to its gambling activities, the enterprise committed over a dozen home and jewelry-store robberies in Illinois and nearby states. The enterprise fenced many of the stolen items through Goldberg Jewelers, a store owned by appellant Mark Polchan. Members of the enterprise also dealt in other stolen goods, such as cigarettes and electronics.

Appellant Michael Sarno occupied the top spot in the enterprise's hierarchy. He made high-level decisions about the gambling operations and had some control over the jewelry thefts as well.

*United States v. Volpendesto*, 746 F.3d 273, 278 (7th Cir. 2014). The Court sentenced Sarno to 300 months' imprisonment. Sarno is 62 years old, and although he indicates he is currently at a private hospital, the Bureau of Prisons' ("BOP") website shows his regular place of incarceration is Petersburg Medium Federal Correctional Institution ("FCI Petersburg") in Hopewell, Virginia. His projected release date is May 7, 2032.

The parties agree that Sarno has exhausted his administrative remedies. Sarno contends that he is at increased risk of serious consequences from COVID-19. Sentencing Guideline § 1B1.13, Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A), states that a reduction is authorized when the court determines that "extraordinary and compelling reasons" exist and the defendant is not a danger to the safety of any other person or the community. Under Application Note 1 to this Guideline, "extraordinary and compelling reasons" exist in four scenarios: (1) defendant suffers from a terminal illness or a serious medical condition that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which [he] is not expected to recover"; (2) defendant is at least 65 years old with a serious health deterioration and has served the lesser of 10 years or 75 percent of his sentence; (3) under certain family circumstances; or (4) another extraordinary or compelling reason exists.

Sarno is currently in an unnamed rehabilitation hospital; he suffers from severe osteoarthritis and is confined to a wheelchair and his hospital bed. He has had incontinence and gastrointestinal issues. He was taken to a hospital in April 2020 after falling out of his wheelchair and lying on the floor for several hours before being helped. After approximately a week in the hospital while being treated for an infection, he was transferred to the rehabilitation hospital where he now resides. According to Sarno, he "is in need of bi-lateral knee and shoulder replacements, [and] he is suffering from renal failure, a chronic kidney disorder,

hypertension, chronic obstructive asthma, and an empyema in the left lung"; as a result, "he was taken out of Petersburg FCI in late April 2020 for emergency surgery and has been in an unknown private hospital since that time and going on four (4) months." (Def.'s Reply, Dkt. # 989, at 1.) Sarno provides no records from his April 2020 hospital stay nor the current rehabilitation hospital.

It appears that most of the medical issues listed by Sarno are either not current or do not place him in a higher-risk category for severe illness if he were to contract COVID-19. On April 28, 2020, the BOP physician spoke with Sarno's doctor at the hospital and noted in Sarno's BOP medical record that he "is demonstrating some renal failure as well as an elevated WBC [white blood count]." However, as already stated, Sarno was treated with antibiotics and the infection reportedly was resolved (Dkt. # 990, at Page 137 of 148); Sarno's medical records do not contain any other indication that he has been treated for kidney problems since April 2020. Sarno's need for knee and shoulder replacements is not on the CDC's list of medically-compromising conditions. Further, updated guidance from the CDC indicates that hypertension and asthma "may," but do not necessarily, increase one's risk of severe illness from COVID-19. *See* https://tinyurl.com/y9chuzkm (last visited Sept. 14, 2020). Moreover, as to asthma, a June 11, 2020 printout from the BOP titled "Health Problems" lists Sarno's asthma as in "Remission." (Dkt. # 990, at Page 70 of 148). The same chart places empyema[1] in the "Resolved" section. (*Id*., at Page 71 of 148.) The one health issue that may place Sarno at an increased risk of severe illness is obesity. The most recent indication of his body mass index ("BMI") is from an April 21, 2020 medical encounter note at the BOP, which lists Sarno's BMI as 31, but also includes a statement that "[p]atient has lost weight." (*Id*., at Page 120 of 148.) The Centers for Disease Control states that those who are obese (*i.e*., a BMI over 30) are at an increased risk of severe illness if they contract COVID-19. *See* https://tinyurl.com/y9chuzkm (last visited Sept. 14, 2020). A more recent medical record of Sarno's BMI is not provided.

Assuming Sarno's apparent obesity is deemed sufficiently serious to constitute an extraordinary or compelling reason for compassionate release, the Court would not grant relief. As an initial matter, Sarno currently is residing in a private rehabilitation hospital and not a BOP facility, so any concerns with contracting COVID-19 while incarcerated simply do not exist at this point. Even if he were housed in a BOP correctional institution, the Court finds that the factors set forth in 18 U.S.C. § 3553(a) do not support compassionate release. As the government points out and as described above and below, the offenses of which Sarno was convicted are extremely serious. In sentencing Sarno, the Court stated in part as follows:

> My finding is based upon the consideration of the sentencing factors contained in 18 United States Code, Section 3553(a). Specifically[,] in that regard, the Court finds that the defendant has been twice previously convicted of felony offenses, one of those offenses a racketeering conspiracy and illegal gambling offense and thus a very similar offense to the case at bar. The other was for extortionate extensions of credit. Both of these convictions ended up in a total

---

[1] Empyema is a collection of pus in the cavity between the lung and the membrane that surrounds it (pleural space). *See* https://www.hopkinsmedicine.org/health/conditions-and-diseases/empyema (last visited Sept. 15, 2020).

> sentence . . . of 86 months of imprisonment, which, it is clear, unfortunately, failed to deter him in any way from further criminal conduct. On the contrary, it appears that the defendant, from the moment he was released from those prison sentences, embarked on a trail of forming the criminal enterprise that he has been convicted of in this current indictment.
>
> He appears to have had a single-minded determination to continue to engage in criminal conduct of an organized nature involving racketeering and gambling and, as a by-product, violence. The Court simply cannot ignore the fact that during the course of this criminal conspiracy, the defendant was an organizer, a supervisor, a leader of a group of individuals who were responsible for criminal conduct in at least four separate states. Robbed victims, tied them up, pointed guns at them, stabbed them, and shot them, and then blew up a building on a public street in this community.
>
> To sum it up briefly, the danger to the public, to those people who are not his family members, are not people he apparently loves, the danger to them from being stabbed, shot and having bombs detonated on public streets is grave; and the likelihood that the defendant will continue to engage in this dangerous conduct appears to me from his history and all that I have seen to be very great. The need to protect the public is there[fore very] high. In addition, there is a clear need to send a message to those waiting to follow in the defendant's footsteps that it would be unwise to do so. It would be detrimental to the public interest for this Court or any other to leave the impression that one can engage in a lifetime of crime in the hope of avoiding capture and conviction until the very end and then retire to some sort of peaceful existence after having wreaked havoc and chaos among others.
>
> For these reasons, I'm convinced that the sentence of 300 months in this case is appropriate regardless of the propriety of the difficult guideline calculation in this case.

(2/8/12 Sentencing Tr., Dkt. # 863, at 92-94.)

These reasons remain intact, eight years after the Court sentenced Sarno, and even considering his hospitalization and medical issues. The Court well remembers Sarno's trial and sentencing and concludes that it would not promote respect for the law nor provide just punishment for his offenses to reduce Sarno's sentence to time served. Continued incarceration is appropriate and necessary.

Moreover, if Sarno returns to a BOP facility, the BOP's efforts to quell the spread of COVID-19 are ongoing and include suspending social visits and internal inmate movements, enhancing health screenings, maximizing social distancing, and suspending staff travel and training sessions. Given these circumstances, the Court is unable to say that an extraordinary and compelling reason for a sentence reduction under § 3582(c)(1)(A) exists.

5

Accordingly, Sarno's motion for compassionate release is denied.

DATE: September 15, 2020

_____
**Ronald A. Guzmán**
**United States District Judge**

5